STATE ex rel. CORNELIA L. RAYMOND v. STELLA LAWRENCE
and Others.[1]

May 29, 1902.

Nos. 12,917—(187).

### Incompetent—Authority of Guardian.

A guardian of an incompetent person has the right to remove his ward
from one state to another, temporarily or permanently, but the right is
always subject to the power of a court of chancery to restrain an
improper removal. Such a removal must always be made in good faith,
and with a view to benefit the ward; and this is especially true where
it is to be to a point outside of the jurisdiction of the court appointing
the guardian.

### Same—Habeas Corpus.

Where an attempt is made by a guardian or by any other person to
exercise any restraint over another party within this state, the writ of
habeas corpus will always be effectual to inquire into the propriety of
any such attempt to restrain, and upon such inquiry the proper court
can make such an order or judgment as the particular case may require.

### Authority of Court Commissioner.

In a habeas corpus proceeding a court commissioner has no authority
to make an order which practically removes a guardian of the person
and property of an incompetent.

### Guardian.

Such a guardian is the custodian of the incompetent, and may care for
and control him in any reasonable manner.

### Removal of Incompetent to Foreign State.

*Held*, in the case at bar, and upon the testimony, that the guardians in
question in this case were not justified in attempting to remove the
incompetent, a resident of Mantorville, Dodge county, Minnesota, in the
probate court of which they had been duly appointed such guardians,
outside the jurisdiction of the court, and into the state of Illinois.

### Order of Appointment—Collateral Attack.

The order appointing these persons guardians of the person and estate
of the incompetent was sufficient in form, and is conclusive at the hear-
ing of a writ of habeas corpus. If questioned at all, it must be in a
direct proceeding.

Writ of habeas corpus issued out of the district court for Dodge

[1] Reported in 90 N. W. 769.

county upon the relation of Cornelia L. Raymond, to determine the right to the care and custody of Catherine Robinson, relator's mother. From an order, Samuel T. Jones, court commissioner, releasing Catherine Robinson from the custody of respondents and restraining them from removing her from the county or interfering with relator's intercourse with her, respondents appealed. New Order.

*Samuel Lord* and *Taylor & Taylor*, for appellants.

*J. J. McCaughey* and *Childs, Edgerton & Wickwire*, for respondent.

COLLINS, J.

Habeas corpus proceedings to contest the right to the care and custody of Mrs. Catherine Robinson; the relator, Cornelia Raymond, being her daughter,—a woman about fifty years of age.

The respondents Lawrence and Huntington were the trained nurses in attendance upon Mrs. Robinson; Chambers, her attending physician; and Ruth and Blanch, the guardians of her person and estate, appointed by the probate court of the county of Dodge, wherein she resided, in pursuance of G. S. 1894, § 4549, and upon the ground that she was an incompetent person. An attempt being made by these respondents to remove Mrs. Robinson from Minnesota to Galesburg, in the state of Illinois, the writ was issued, and a hearing had by and before the court commissioner of Dodge county. From the order made by him, sustaining the relator, the respondents appeal to this court, under the provisions of Laws 1895, c. 327. The cause is therefore one to be tried before this court de novo, and upon testimony which has been taken by a referee and duly returned.

1. Upon this appeal it has been contended by counsel for the relator that Messrs. Ruth and Blanch are not guardians of the person of Mrs. Robinson, and for that reason were and are without authority to restrain or control her person in any manner. There is no merit in this contention. These gentlemen were duly appointed by a court of competent jurisdiction guardians of the person and property of the incompetent. The order making such appointment is sufficient in form, and is conclusive in this, a purely collateral matter. If questioned at all, it must be in a direct proceeding.

2. While there can be no doubt of the right of a guardian to remove his ward temporarily from one state to another, or even to change the ward's place of residence from one state to another, such change or removal must always be in good faith, and with a view to the benefit of the ward. The right is always subject to the power of a court of chancery to forbid and restrain an improper removal or injudicious change. The welfare of the ward is the chief matter to be considered,—not the wishes of the relatives, nor the convenience of the guardian. The rule which governs in the case of an absolute incompetent, as is Mrs. Robinson, is that which prevails when the welfare of an infant child is before the court. The guardian does not have unlimited power over the ward, and cannot change its temporary or permanent residence to its detriment, and this is especially true where an attempt is made to remove the ward to a point outside of the jurisdiction of the court appointing the guardian. And the court of chancery has full and complete jurisdiction over the persons and the estates of infants and all others laboring under legal disability, as well as their guardians, trustees, or other custodians. It matters not whether the relationship results from natural ties or is created by law. The jurisdiction in such cases is plenary, and potent to reach and afford relief in every case of an improper exercise of the power to change the residence of a ward, and to take him beyond the jurisdiction of his appointment. As before stated, the power exists in the guardian to make a change, but there must be a proper and faithful exercise of it, and it must be for the benefit of the ward. Townsend v. Kendall, 4 Minn. 315 (412), and cases cited.

3. Where an attempt is made by a guardian or by anybody else to exercise any restraint over the person of any one within this state, the writ of habeas corpus, or any other appropriate remedy, will always be effectual to inquire into the propriety of any such attempted restraint, and upon such inquiry the proper court can make such an order or judgment as the particular case may require. Townsend v. Kendall, supra. It follows that the court commissioner had full authority to inquire into the alleged restraint of Mrs. Robinson, and to make an order forbidding her removal from the state.

But he went much farther than this, and ordered that she be released from the care and custody of the respondents, and each of them, including the guardians, and also forbade all interference with the relator, should she desire to remain with Mrs. Robinson, or to provide for her comfort and happiness. In this drastic order the court commissioner exceeded his powers, and attempted to exercise authority over matters not within his jurisdiction. He removed the guardians, practically, for he deprived them of all authority over the person of their ward. This he could not do. Until removed by the court having original jurisdiction in such cases, these guardians are the custodians of the incompetent, and can care for and control her in any reasonable manner. They may designate the persons in whose immediate charge she shall be,— such as the attending physician and nurses,—and may insist upon the observance of reasonable rules and regulations conducive to her health and comfort. They must not act, however, in an arbitrary or unreasonable manner.

4. This brings us to a brief consideration of the facts as shown by the testimony taken by the referee. Mrs. Robinson is the widow of Prosper Robinson, who died on August 16, 1901, at Mantorville, Dodge county, leaving quite an estate to her. She also had and has property in her own name. She is nearly seventy-five years of age, suffering from paralysis, and constantly increasing senile dementia, requiring the continual medical care and treatment of a physician, and the constant attendance of two capable trained nurses. It is undisputed that she is as incapable and helpless as a babe in arms, and apparently requires more attention, because she weighs, approximately, two hundred pounds. It will be seen that she is in a deplorable condition, and is a constant burden upon those who undertake, or whose duty it may be, to take care of her. For a number of years her residence has been in her own dwelling at Mantorville, where she has friends and acquaintances. Mr. Ruth, one of the guardians, and her only brother, resides there. So does the other guardian, Mr. Blanch. Mrs. Raymond is a resident of that place, while another sister, Mrs. Smith, lives in South Dakota. The only other relative, so far as appears, is Mrs. Percy, a resident of Galesburg, Illinois, the wife

of a physician, the daughter of Mrs. Smith, and consequently the granddaughter of Mrs. Robinson. It was also shown that Mrs. Percy, when a child, was adopted by Mr. Robinson, and thereafter lived with him and Mrs. Robinson until her marriage. Dr. Chambers, also a resident of Mantorville, had been in attendance upon Mrs. Robinson some six months prior· to the attempted removal from Mantorville to Galesburg, on December 24, last; and it is obvious that his services had been of great value to his patient, and should be continued. The nurses had also been at Mantorville for several months, and there has been no reason suggested why they could not remain at that place.

We are justified in saying that upon the testimony as reported, taking into consideration the personal difficulties which had arisen between the relator and her husband, on the one side, and Dr. and Mrs. Percy, on the other, the court commissioner was warranted in forbidding the removal, and in concluding that the motives actuating the persons who directed that it be done were not wholly unselfish or above suspicion. It is proper to consider these personal difficulties, for they serve to illustrate the purpose and to explain and characterize the attempted removal. It is true that testimony as to these altercations was confined to the version rendered by the relator and her witnesses. Counsel for the respondents did not see fit to introduce testimony tending to present the other side of the transactions, which commenced almost immediately after the death of Mr. Robinson, and ended with the issuance of the writ in this case. They made no effort to meet the charge of Mrs. Raymond that she had arbitrarily been refused permission to see her mother, or to care for her in any way, and that the mother, although anxious to see her daughter, had unreasonably been deprived of the opportunity. No denial or explanation of the various charges of disgraceful treatment of the daughter and her husband at Mrs. Robinson's house by Dr. Percy, at least, was attempted. From the time the guardians were appointed, it is claimed, and not without reason, that Mr. Ruth has been hostile towards this daughter. It is also apparent that Mr. Blanch has usually permitted Mr. Ruth and Mrs. Percy's attorney to manage matters in accordance with their own views, and has made no

effort to assert his rights in opposition to any course of conduct pursued by them. The two trained nurses, and the doctor as well, seem to have been fair and unprejudiced, and not at all inclined to act contrary to their own sense of right, or to color their testimony in any way or for either party.

We have read the evidence with care, and fail to see in what manner it would have been beneficial to this helpless old lady to take her from her home, in her deplorable condition, to the state of Illinois for the winter season, or for any purpose. She was receiving the best of medical treatment, nursing and care. Her person and her estate were under the jurisdiction of the probate court of Dodge county, of which Mantorville is the county seat, and there was no reason whatsoever for removing her to another state, and beyond the jurisdiction of the court which must necessarily control her guardians and exercise supervision over her affairs. We cannot come to any other conclusion than that her removal was actuated by ill feeling and personal hostility towards the relator, and that her own happiness, comfort, and welfare were given scant consideration by the guardians. That she might experience a milder climate seems to have been the alleged reason for the change, but with a woman in her condition, wholly unable to be out of doors in the winter season, confined to the house, and absolutely incapable of appreciating a milder temperature, we are not convinced of the good faith required to fully justify the persons involved in transporting Mrs. Robinson, in her wretched condition, to a new home, three or four hundred miles distant, where the change of climate cannot be very noticeable; where a stranger would have to be called as a medical attendant, there to study her case, and to become acquainted with her physical condition and mental peculiarities. There is no more reason for a change of climate in her case than there would be with a babe. And as before suggested, the change proposed is inappreciable. Mrs. Robinson should be allowed to live out the few months or years which may remain to her in her own house, and with her old friends, and not subjected to the discomforts of railway travel, the unpleasantness of new surroundings, and difficulties incident to a change of physicians.

5. We have considered the claim that in this proceeding a proper order should be made fixing the rights of Mrs. Raymond with reference to the care of and access to her mother in the future. We are of the opinion that this is not now a proper subject for our determination. It is a matter for the exercise of sound discretion upon the part of the guardians. This discretion, we believe, will not be abused when we suggest to them that there can be no good reason for refusing the mother and daughter the privilege of seeing each other at reasonable hours and under proper circumstances. We do not mean to intimate by this that the daughter should have access to the mother at all times, or that she should have the absolute privilege of remaining with her alone in the room, as she seems to demand.

6. It is incumbent, under the statute, for this court to make such an order in the premises as is deemed just and proper. It is therefore ordered that each and all of the respondents, their servants and agents, refrain, and are hereby restrained, from any further attempt to remove said Catherine Robinson from the jurisdiction of the probate court of Dodge county at this time. If, in the future, her guardians deem it advisable, for the best interests of their ward, to remove her from said county to any point, either within or without this state, let them apply to the probate court, and obtain an order fixing a day upon which all parties interested may be heard upon the propriety of such removal. The relator, Mrs. Raymond, and her sister, Mrs. Smith, must be notified of such hearing by personal service of a copy of the order upon them, and each of them, if within the state of Minnesota, at least ten days before the hearing. If without the state, and the post-office address of either is known, such order shall be served by mail, the judge of probate causing a copy thereof to be inclosed in an envelope and addressed, postage prepaid, to the post-office address of each, at least ten days before the day of such hearing. If an order for removal be made upon the hearing, no attempt shall be made to execute it until five days after filing the decision of the court, and personal notice thereof to such of her relatives as appear at the hearing, and reside or are within the state.

The clerk of this court will transmit a copy of this decision to the probate court of Dodge county.