### WILSON et al. v. BEARDEN et al.
#### No. 12842.

Court of Civil Appeals of Texas. Fort Worth.

Feb. 18, 1933.

Rehearing Denied March 18, 1933.

McFarlane & McFarlane, Marshall & King, and Fred T. Arnold, all of Graham, for appellants.

Bouldin & Zivley and J. R. Creighton, all of Mineral Wells, for appellees.

CONNER, Chief Justice.

Briefly stated, this suit originated in the county court of Young county, Tex., upon the application of the appellant Frank H. Wilson to be appointed permanent administrator of the estate of Annie E. Bearden, deceased. That court denied the application on the ground that there was no necessity therefor. An appeal was taken to the district court of Young county, and certain heirs and certain alleged debtors intervened, alleging debts and seeking the appointment of one of the heirs as the administrator. The district court, after a hearing, concluded that the courts of Young county were without authority in law to make the appointment, and entered judgment dismissing the case, and from that judgment an appeal has been duly prosecuted to this court.

The jurisdictional question is the sole one presented for our determination.

The facts show that A. L. Bearden in his lifetime owned 525 acres of land in Young and Archer counties. He lived in Young county on this land as his homestead for more than ten years before his death, which occurred in July, 1918. At the time of his death his wife, Annie Bearden, was living with him on said homestead and was of unsound mind. Appellant Frank H. Wilson was appointed as guardian of her person and estate in 1924, and was her acting guardian continuously until her death in March, 1932. After the death of A. L. Bearden, his daughter, Mrs. Zula Claiborne, came and lived in the homestead house and cared for her mother until she, Mrs. Claiborne, moved to Mineral Wells, Tex., about June 3, 1927. In arranging for Mrs. Claiborne to care for her mother, Frank H. Wilson told her that Annie Bearden would have to stay with her or he would have to place her in an asylum. Mrs. Claiborne agreed to care for her, and she was at all times herein stated paid varying sums for that care from the estate of Annie Bearden, which appears to have been large (of an approximate value of $100,000). In addition to the various sums paid Mrs. Claiborne for the care of her mother, the guardian also paid for Annie Bearden's doctors' bills, medicine, destruction of property and additional help needed in her care, which continued until the time of her death. It appears that the guardian of Annie Bearden had complete control of her person and estate from the date of his appointment until her death.

The personal property and original homestead of Annie Bearden was situated in Young county. Upon the removal of the daughter, Mrs. Zula Claiborne, to Mineral Wells, she purchased a home in which she and her mother resided until the mother's death. The other facts show sufficient grounds for the appointment of a permanent administrator.

In title 54, Rev. Civ. Statutes, relating to estates of decedents, it is provided (article 3293) that:

"Wills shall be admitted to probate, and letters testamentary or of administration shall be granted:

"1. In the county where the deceased resided, if he had a domicile or fixed place of residence in the State.

"2. If the deceased had no domicile or fixed place of residence in the State, but died in the State, then either in the county where his principal property was at the time of his death, or in the county where he died. * * *"

█ It is the contention of appellant that the domicile and fixed place of the residence of Annie Bearden at the time of her death was in Young county and not in Palo Pinto county, and that therefore the courts of Young county had the jurisdiction and power of the appointment. In other words, that Annie Bearden, being non compos mentis, did not and could not abandon her Young county homestead and could not voluntarily choose her residence or domicile so as to deprive the proper court of Young county of jurisdiction of her estate for administration, citing the following cases: Schwartz v. West, 37 Tex. Civ. App. 136, 84 S. W. 282, 283; Flynn v. Hancock, 35 Tex. Civ. App. 395, 80 S. W. 245; Angier v. Jones, 28 Tex. Civ. App. 402, 67 S. W. 449; Green v. Rugely, 23 Tex. 539; Foreman v. Meroney, 62 Tex. 727; Halverson v. Livengood (Tex. Civ. App.) 4 S.W.(2d) 588; Balfour v. Collins, 119 Tex. 122, 25 S.W.(2d) 804; Nunn on Homestead Exemptions, p. 163 and following, § 7.

It must be admitted that Annie Bearden was without the mental capacity to change her domicile and fixed place of residence from Young county, where it originally existed, to Palo Pinto county, where she died. But did her guardian have such power? Article 4162, chapter 6, Rev. Statutes, relating to the powers and duties of guardians, provides that: "The guardian of the person is entitled to the charge and control of the person of the ward, and the care of his support and education, and his duties shall correspond with his rights."

Article 4165 reads: "It is the duty of the guardian of the estate to take care of and manage such estate as a prudent man would manage his own property. He shall account for all rents, profits and revenues as the estate would have produced by such prudent management."

Article 4166: "The guardian of both person and estate has all the rights and powers and shall perform all the duties of the guardian

of the person and of the guardian of the estate."

We find no limitation of the powers thus given to a guardian of the person and estate of a minor or of one of unsound mind. The appellant Wilson was without dispute the guardian of the person and estate of Annie Bearden, and his good faith acts as such, we think, must be upheld.

We have examined the authorities cited in behalf of appellant, but think they are without application to the facts in the present case. It is true that the temporary absence of a person from his homestead, with intent to return thereto, will not operate as its abandonment; nor will an enforced absence by confinement in an asylum so operate. Flynn v. Hancock, 35 Tex. Civ. App. 395, 80 S. W. 245. But here the evidence is undoubtedly sufficient to show that the guardian, whose will the statutes has in effect substituted for that of Annie Bearden, not only consented to but urged the removal of Annie Bearden to Mineral Wells, and committed her care to the daughter, Mrs. Zula Claiborne, and there she remained some five years until her death, with the full consent of her guardian. Nothing in the evidence indicates that the guardian so acted in bad faith; on the contrary, it would seem that it was for the benefit of Annie Bearden in whose interest the guardian's duty was to act, presumably with the approval of the probate court. The daughter, on removal to Mineral Wells, purchased a home with every evidence of its so continuing, and there is no evidence tending to show that either Mrs. Claiborne or the guardian at any time entertained the purpose or intent of returning Annie Bearden to her old home or to remove her residence to any other place. It must be assumed, we think, that under the circumstances the guardian's commitment of the care of the afflicted mother to a loving daughter was in line with his duty, and, there appearing no purpose on the part of the daughter or of the guardian that the residence of the mother at Mineral Wells should ever be changed, the trial court was justified in holding that the fixed residence of Annie Bearden at the time of her death was in Palo Pinto county, Tex., within the meaning of the statute we have quoted. The fixity of things, of conditions, of a status, is variable in circumstance and subject to change.

In the case of Wheeler v. Hollis, 19 Tex. 525, 70 Am. Dec. 363, the Supreme Court of this state held that the guardian had authority to move his ward from one state to another. In that case it was said that: "The main question in the case is, whether the removal of Watson and wife with his ward, * * * from Mississippi to Texas, and hence to Arkansas, effected a change of the domicil of the ward; for it is not questioned and is undeniable, that the law of her domicil at the time of her death must regulate the succession to her personal property. Judge Story, in his Conflict of Laws, has examined the authorities on the question, whether a guardian has the power to change the domicil of his ward from one country to another, so as to change the rule of succession to his personal property, in case of his death, at some length; and from his citations it appears that, while there is a difference of opinion among foreign jurists, the weight of authority is in favor of the power, if the change was without fraud."

The ruling so made was reaffirmed and approved by our Supreme Court in the same case as it appears in 33 Tex. 512.

In R. C. L. vol. 9, p. 550, § 13, it is said:

"The domicile of a person non compos mentis is, by reason of his mental disability, usually not within his control, but under the control of his guardian, who may appoint the place of his residence. The domicil of an idiot may be changed by the direction or with the assent of his guardian, whether expressed or implied. This is especially true in case a person is wholly bereft of his understanding. * * *

"And further if the guardian establishes the insane ward's family in a new domicil, the domicil of the ward follows that of the family. The authority of a guardian of an insane person to fix his ward's domicil is always subject, however, to the power of a court of chancery to restrain an improper exercise of the right. The guardian must act in good faith and in the best interests of his ward."

In section 12 on the preceding page of the same work the following is said: "Where an infant is under guardianship the domicil of the guardian is not necessarily that of the ward. The ward is not usually a part of his guardian's family. As a general rule, the guardian may appoint the place of the ward's domicil, though it be found and often is a place distinct from his own. But such control is not absolute or arbitrary. The guardian must act in his ward's best interests, and without fraud. But if he is acting fairly, even though his act changes the nature of the succession of the infant's estate, ordinarily the ward must bear the consequences as risks incident to the management of his affairs." See, also, American English Encyclopedia of Law, vol. 15 (2d Ed.) p. 52; Holyoke v. Haskins, 5 Pick. (Mass.) page 20, 16 Am. Dec. 372.

Without further discussion, we think under the facts and authorities available that the finding of the trial court of a want of jurisdiction for the appointment of a permanent administrator of the estate of Annie Bearden, deceased, must be upheld, and the judgment below in all things affirmed.