## In re GUARDIANSHIP OF HERSEY.
### No. 9823.

Court of Civil Appeals of Texas.
San Antonio.

March 25, 1936.

Rehearing Denied May 6, 1936.

J. S. Wheless, of Kerrville, and Kilgore & Rogers, of Wichita Falls, for appellant.

Morriss & Morriss, of San Antonio, and W. C. Baker, of Kerrville, for appellee.

SMITH, Chief Justice.

In January, 1931, in a proceeding in the probate court of Kerr county, Marguerite Hersey, a resident of Kerrville, was adjudged to be of unsound mind, and Mrs. Effie Holland was appointed guardian of her person, and is still acting as such. Dr. E. Galbraith was at the same time appointed, and is still acting, as guardian of the ward's estate, all of which is located in Kerr county.

It appears that Mrs. Holland's home was formerly in Wichita county, and some time after her appointment as guardian, apparently in 1933, she took her ward to Wichita Falls for the purpose of making that their future place of residence.

Subsequently, upon the assumption that the ward had removed her residence from Kerr to Wichita county, Mrs. Holland instituted this proceeding in the probate court of Kerr county to have the whole guadianship proceedings removed to the probate court of Wichita county, as provided by Vernon's Ann.Civ.St. art. 4295a, Acts 1933, 43d Leg., p. 96, c. 47. This move was duly contested by Wm. T. Bailey, a cousin, and Carrie A. France, aunt and nearest relative of the ward, and Will A. Morriss, Sr., an attorney of San Antonio, who had represented the ward in previous proceedings affecting. her status and estate. Upon a hearing, the probate judge granted Mrs. Holland's application, and ordered the guardianship proceedings removed to Wichita county. The contestants appealed, from that order, to the district court, in which, after a jury trial, the application for removal was denied. Mrs. Holland, the guardian, has appealed.

■ We are confronted, at the outset, with the contention of appellant that the trial judge, Hon. Lee Wallace, was disqualified to sit in the case, because, it .is . alleged, he had been of counsel in the litigation. In this connection the record shows that for some years prior to and during 1929, the demented ward Miss Hersey had resided in Kerrville with her father and stepmother. In the spring of 1929 her father died. She had no other near relatives except an aunt, Mrs. France, and a cousin, William T. Bailey, residents of the state of Rhode Island. It seems the ward inherited an estate of about $40,-000, in cash and securities, which her cousin, Bailey, had held in trust· for her, and which he turned over to her after her father's death. Bailey seems not to have known of Miss Hersey's imbecility. After her father's death, Miss Hersey's affairs seem to have been looked after by persons in Kerrville, who, in 1930, employed appellant, Mrs. Holland, as her body servant, for which she was paid $7 per week. It appears that late in 1930 Bailey received information that his cousin's affairs were being mismanaged, and her estate dissipated, whereupon he came from his home in Rhode Island to Kerrville, and there employed Judge Wallace, who had recently retired as county judge and entered the law practice at Kerrville, to institute proceedings to recover and impound Miss Hersey's estate. Judge Wallace in turn employed Will A. Morriss, Sr.,

and the latter's firm, Morriss & Morriss, to assist in the proceedings to recover the estate. They instituted the proceedings, which soon eventuated in the recovery and impounding of the estate, and, as an incident of that proceeding, separate proceedings were instituted to have Miss Hersey adjudged, and guardians of her person and · estate appointed. This proceeding resulted in the adjudication, and the appointment of Mrs. Holland as guardian of the person and Dr. Gailbraith as guardian of the estate of the demented girl. It appears that while Judge Wallace sat with counsel for the ward in the latter proceedings, he did not participate and was not employed therein, his employment and activities being limited to the original proceeding to recover Miss· Hersey's estate. · The present proceeding, instituted by Mrs. Holland to remove the guardianship from Kerr to Wichita county, and contested by Mrs. France, Bailey, and Will A. Morriss, Sr., was subsequently filed, after Judge Wallace's accession to the district judgeship,, and three years after the termination of the original proceeding, in which only he had been employed. It seems obvious that his employment as an attorney in that proceeding could not be given the effect of disqualifying him from sitting in the present, and entirely different, proceeding, merely because of the remote relation of the earlier proceedings. Const.Tex. art. 5, § 11; Article 15, R.S.1925; 25 Tex.Jur. p. 292, § 48; Galveston & H. Inv. Co. v. Grymes, 94 Tex. 609, 63 S.W. 860, 64 S. W. 778. We overrule appellant's second assignment of error, in which this point is made.

The controlling question on the merits of the case is raised in appellant's first, third, and eighth assignments of error, in which it is contended that the evidence showed, conclusively, that the place of residence of the ward had been removed from Kerr to Wichita county, wherefore, it was mandatory, by statute, that the court render judgment transferring the guardianship to Wichita county. Under a recent statute it is provided that when a person of unsound mind, so adjudicated, removes his or her residence to a county other than that in which a guardianship proceeding is pending, that proceeding shall be removed to the county of the newly acquired residence, upon application made in the pending proceeding.

Vernon's Ann.Civ.St. art. 4295a, Acts 1933 (Gen.Laws 43d Leg., c. 47, p. 96).

The trial judge did not submit to the jury the issue of whether the ward's residence had been removed to Wichita county. He submitted but the one issue, which the jury answered in the affirmative:

"Do you find from a preponderance of the evidence that in the removal by the applicant Effie Holland of the residence of the ward, Marguerite Hersey, from Kerr County, Texas, to Wichita County, Texas, said Effie Holland was acting against the best interests of said ward?"

The evidence quite fully sustained this finding. It was sufficient to support a specific finding, had the issue been submitted, that the guardian determined to remove her ward to Wichita county, only when she found, after efforts to that end, that she would not, by the court in which the guardianship was pending, be appointed guardian of her ward's estate, as well as of her person, and that she could not be made "heir" to her ward's estate; that she would not, in short, be permitted to exploit her ward's estate through the orders of that court. The record further shows that the ward had a comfortable home in Kerrville, built and well furnished for her own use, in which she and her guardian resided, without cost, and that the guardian took her ward from that home, and moved her into the guardian's own dwelling house in Wichita county, for which the guardian charged the ward's estate a substantially higher rental than it could command from others. Various other facts and circumstances, not necessary to detail here, were in evidence, to amply support the jury finding. By those facts, and that finding, the appeal presents the bald question of whether a guardian may capriciously, or arbitrarily, or even fraudulently effect a transfer of pending guardianship proceedings to a distant county, by simply carrying off her ward to such county and decreeing that county to be the ward's residence, even though the removal is against the best interest of the ward. If so, then this judgment must be reversed; if not, it must be affirmed.

It is true, of course, that a person adjudged by law to be of unsound mind is incapable of electing a place of residence, of determining if a given place is or is not a suitable residence for her. And thus arises the corollary, that the authority for fixing the ward's place of residence is in the guardian. But it has always been the law in this state that this authority is not absolute, and may not be exercised arbitrarily, or in bad faith, or fraudulently, and contrary to the best interest of the ward. If, then, the guardian abuses that authority by arbitrarily removing the ward to a distant county, in bad faith or with fraudulent intent, and against the best interest of the ward, such removal will not effectuate a legal change of the ward's residence, and a statute such as that under which the guardian seeks to remove the guardianship proceedings, effective only in cases of a change in the residence of the ward, is not available to the guardian. That statute is available only in cases in which the guardian has changed the ward's residence in good faith, and for the best interest of the ward. The jury in this case found, upon ample evidence, that the guardian acted against the best interest of the ward in removing the latter to Wichita county, from her home in Kerr county, and under that finding, and in observance of the principle announced above, the trial court properly denied the guardian's application for removal of the guardianship proceedings to Wichita county. Any other ruling would have been inhuman, as well as in positive derogation of statutory provisions, and judicial interpretations thereof, designed to protect helpless imbeciles from those who would impose upon them, against their best interests. We therefore overrule appellant's first, third, and eighth assignments. 15 Tex.Jur. 715, § 6; 9 R.C.L. 550, §§ 12, 13; 28 C.J. 1112, § 180; Wheeler v. Hollis, 19 Tex. 522, 70 Am.Dec. 363; Wilson v. Bearden (Tex. Civ.App.) 59 S.W.(2d) 214 (writ refused); Marheineke v. Grothaus, 72 Mo. 204; Mills' Guardian v. City of Hopkinsville (Ky.) 11 S.W. 776; State v. Lawrence, 86 Minn. 310, 90 N.W. 769, 58 L.R.A. 931. Appellant's remaining assignments are deemed without merit and will be overruled, without discussion.

The judgment is affirmed.