In re Elvira MEDWORTH, Conservatee.

No. C8–96–2030.

Court of Appeals of Minnesota.

April 22, 1997.

Erick G. Kaardal, Trimble & Associates, Ltd., Minnetonka, for appellant Elvira Medworth.

Timothy R. Erlander, Minneapolis, for respondent Gary Peper.

Considered and decided by AMUNDSON, P.J., and SHORT and HARTEN, JJ.

## OPINION

SHORT, Judge.

On appeal from an order authorizing the conservator to move the conservatee to an

out-of-state residence, the conservatee argues the trial court abused its discretion in failing to evaluate whether the move was consistent with her best interests, based on her general welfare, and necessary to provide her with needed care or services.

## FACTS

Since the early 1950's, 87–year–old Elvira Medworth has lived in her own Minneapolis home. In 1991, several of Medworth's family members and neighbors began assisting her with housecleaning and other homemaking responsibilities. In particular, a niece assisted Medworth daily until that niece suffered a stroke in 1994. From that time forward, Medworth's nephew has been in charge of Medworth's care and has visited her on a weekly or biweekly basis. In 1996, the nephew was appointed conservator of Medworth and her estate.

Medworth's health deteriorated over time. She suffered two strokes, underwent in-hospital treatment and rehabilitation at a nursing home, and temporarily resided in an assisted-living facility due to a broken leg resulting from a fall at the nursing home. Medworth happily returned to her home on May 31, 1995, but her falls continued.

In January of 1996, Medworth visited the Hennepin County Medical Center because she was unable to move her right side. After an examination, Medworth's doctor concluded she could live at home only with 24–hour care. Shortly thereafter, a social worker visited Medworth's home to determine whether she was safe in her living arrangement.

Medworth's conservator then began investigating care options for his aunt. Initially, he attempted to locate Caucasian caregivers because Medworth allegedly had complained about the African–American nursing home staff. When Hennepin County Care Services informed the conservator that no care provider would allow him to select a provider by race, the conservator opted not to call any other potential in-home providers. Instead, the conservator chose a congregate-living apartment building near Medworth's relatives in Amery, Wisconsin, which employed an all-Caucasian staff.

At a hearing on the conservator's relocation petition, Medworth expressed a strong preference to remain in her home. She testified that remaining in her house was her primary concern, and that she was willing to spend some of her own money to obtain in-home care. The trial court had before it evidence that on a prior occasion, Medworth had referred to her home as "[her] pride and joy," stating "I love it. It is what I worked hard for all my life." A social worker testified that to be safe in her home, Medworth should receive 24–hour supervision and assistance. Medworth's family physician expressed his opinion that Medworth could safely remain in her home with proper support and a mobilization of community services. The conservator testified Medworth's social security benefits would cover the cost of her care at the Amery assisted-living residence, and estimated it would cost an additional $140 per month to provide care in Medworth's Minneapolis home. Apart from the conservator's estimate, neither party introduced evidence as to the cost of 24–hour in-home care.

## ISSUE

Did the trial court abuse its discretion in granting the conservator's petition to change Medworth's place of abode?

## ANALYSIS

 The right to establish one's home is inherent and inalienable. *Thiede v. Town of Scandia Valley*, 217 Minn. 218, 224, 14 N.W.2d 400, 405 (1944); *see* Minn. Const. art. I, §§ 7, 16 (recognizing individual's right to "life, liberty or property" and providing "The enumeration of rights in this constitution shall not deny or impair others retained by and inherent in the people"). While a conservator generally has extensive powers, an exercise of authority encumbering a conservatee's autonomy and civil rights is allowable only to the extent necessary to provide for needed care and services. Minn.Stat. § 525.56, subd. 3(6) (requiring that conservator's restrictive exercise of power be necessary for conservatee's care); *see generally*

*id.,* subd. 3(1)–(6) (1996) (enumerating conservator's powers); *see also In re Guardianship of Mikulanec,* 356 N.W.2d 683, 687 (Minn.1984) (stating intent of general conservatorship statute is to grant least amount of power necessary to protect conservatee); *In re Conservatorship of Foster,* 535 N.W.2d 677, 681 (Minn.App.1995) (same), *aff'd,* 547 N.W.2d 81 (Minn.1996). A conservator may change a conservatee's place of abode only if consistent with the best interests of the conservatee. *See* Minn.Stat. § 526.56, subd. 3(1) (1996) (granting conservator power to change conservatee's place of abode); *In re Conservatorship of Torres,* 357 N.W.2d 332, 338 (Minn.1984) (emphasizing best interests of ward or conservatee in guardianship proceeding).

■ Where a trial court weighs statutory criteria in light of its findings of fact, its conclusions include mixed issues of fact and law. *Maxfield v. Maxfield,* 452 N.W.2d 219, 221 (Minn.1990). In such a case, this court may correct the trial court's erroneous application of the law, but we review the trial court's ultimate conclusions under an abuse of discretion standard. *Id.* On appeal, we will not set aside a trial court's factual findings unless clearly erroneous. Minn.R.Civ.P. 52.01; *In re Conservatorship of Lundgaard,* 453 N.W.2d 58, 60–61 (Minn.App.1990).

■ In granting the conservator's petition to move Medworth from her home, the trial court found Medworth required 24–hour care and no plan was in place to provide for Medworth's safety while living in her own home. While these findings are important, the trial court's analysis should ultimately have focused on the necessity of moving Medworth's residence to provide her with needed care and services. *See* Minn.Stat. § 525.56, subd. 3(6) (restricting conservator's authority over conservatee to extent necessary to provide requisite medical care, where conservator's exercise of authority limits civil rights and restricts personal freedom); *see also* Alison Patrucco Barnes, *Beyond Guardianship Reform: A Reevaluation of Autonomy and Beneficence for a System of Principled Decision–Making in Long Term Care,* 41 Emory L.J. 633, 732 (1992) (recognizing "least restrictive alternative" standard requires that guardian's decisions "be those that least restrict individual freedom * * *").

■ When analyzing whether a change in abode is a proper exercise of a conservator's power, the welfare of the conservatee is of paramount importance. *See State ex rel. Raymond v. Lawrence,* 86 Minn. 310, 312, 90 N.W. 769, 770 (1902) (holding welfare of ward is of utmost concern when guardian proposes to move ward from present abode); *see also Webster's New Universal Unabridged Dictionary* 2077 (Jean L. McKechnie ed., 2d ed. 1983) (defining "welfare" as "the condition of health, prosperity, and happiness"). This rule holds especially true when a conservator proposes to move the conservatee outside of the jurisdiction appointing the conservator. *See Lawrence,* 86 Minn. at 312, 90 N.W. at 770 (arguing same principle with respect to guardian and ward relationship).

After a careful reading of the record, we conclude that although the trial court properly found an assisted-living arrangement would suffice to provide needed medical services for Medworth, there remains insufficient evidence to show relocation was in Medworth's best interests or essential to provide for her care, or that the decision was made in consideration of her overall welfare. The record demonstrates: (1) with the exception of the congregate-living apartment in Amery, Wisconsin, the conservator failed to consider seriously any additional housing alternatives for Medworth; (2) the trial court entertained no evidence as to the cost of making Medworth's home safer; (3) the conservator made only one telephone call to explore possible in-home care arrangements; (4) two doctors testified that with the provision of proper support services, Medworth is capable of living at home; and (5) the social worker assigned to Medworth's case testified that while Medworth required 24–hour care, proper care could be provided either in her home or in a retirement center. The record also shows that Medworth is deeply attached to the home she has lived in for many years and has repeatedly expressed her preference to remain there. *See In re Guardianship of Kowalski,* 382 N.W.2d 861, 867 (Minn.App. 1986) (holding reliably-expressed wishes of ward are primary consideration in determin-

ing ward's best interests), *review denied* (Minn. Apr. 18, 1986); *see also* Barnes, *supra*, at 732 (recognizing that no unnecessary assistance should be provided over ward's objection).

We also are troubled by the conservator's testimony that Medworth's alleged racial preferences played a significant role in limiting his investigation into care alternatives. While the conservator most likely had good intentions in moving his aunt to Wisconsin, the discriminatory rationale underlying his decision cannot be allowed. In the face of an inherent right such as the establishment of one's own home, the conservator's admittedly discriminatory action, and the entire record before us, we must conclude the trial court abused its discretion in granting the conservator's petition to move Medworth from her home to a congregate-living apartment in Amery, Wisconsin.

### DECISION

Although the trial court properly determined Medworth required 24–hour medical services, there is no evidence in the record that moving Medworth from her home to an out-of-state congregate-living apartment was analyzed in consideration of her best interests or general welfare or is necessary to provide Medworth with care.

**Reversed.**