[Civ. No. 24959. Third Dist. May 28, 1986.]

BANK OF AMERICA, Petitioner, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY, Respondent;
JENNIFER LYN SORENSEN, a Minor, etc., Real Party in Interest.

[Civ. No. 25023. Third Dist. May 28, 1986.]

JENNIFER LYN SORENSEN, a Minor, etc., Petitioner, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY, Respondent;
BANK OF AMERICA, Real Party in Interest.

708

**COUNSEL**

George W. Coombe, Jr., Winslow Christian, Kristian D. Whitten and Daniel H. Sandberg for Petitioner in No. 24959 and Real Party in Interest in No. 25023.

No appearance for Respondent.

Estelle A. Schleicher, Wilcoxen & Callahan and Daniel E. Wilcoxen for Real Party in Interest in No. 24959 and Petitioner in No. 25023.

**OPINION**

**SIMS, J.**—In these consolidated petitions for writ of mandate,[1] a plaintiff and a defendant challenge the same ruling on a demurrer.

Plaintiff Jennifer Lyn Sorensen (hereafter Jennifer), a minor, argues the trial court overreached. She contends the trial court erroneously concluded certain of her claims were barred by the guardianship res judicata provision

---

[1]*Bank of America* v. *Superior Court (Sorensen)* 3 Civil Number 24959 and *Sorensen* v. *Superior Court (Bank of America)* 3 Civil Number 25023.

contained in Probate Code section 2103.[2] (Statutory references are to the Probate Code unless otherwise indicated.) She wants the demurrer overruled.

Defendant Bank of America NT & SA (hereafter Bank) contends the trial court underreached. Bank argues the trial court should have sustained its demurrer so as to require that Jennifer's nonbarred claims be heard by the superior court sitting in probate rather than in its general law jurisdiction.

We conclude the trial court properly interpreted section 2103 to require a showing of extrinsic fraud in order to overcome the res judicata effect of an order approving a guardianship accounting. We also conclude the trial court correctly determined Jennifer's complaint failed to plead facts necessary to make this showing and could not be amended to do so. Since the trial court properly concluded certain of Jennifer's claims were barred by res judicata, we deny Jennifer's writ petition. With respect to Jennifer's nonbarred claims, we conclude Bank properly invoked respondent superior court's probate jurisdiction. We shall therefore issue a writ directing respondent court to hear Jennifer's surviving claims in probate.

## FACTUAL AND PROCEDURAL BACKGROUND

In July 1974, Jennifer's father died leaving her approximately $200,000 in life insurance proceeds and an estate of approximately $10,000.[3] On December 12, 1974, Bank was appointed as guardian of Jennifer's estate. (See § 1501.) Bank received the estate's assets in January of 1975.

Orders settling Bank's first through fifth annual accountings as guardian were approved without objection between 1976 and 1980. On April 20, 1981, Bank sent Jennifer (through her mother) notice of hearing on Bank's sixth annual accounting. On May 28, 1981, the superior court sitting in probate (hereafter probate court; see *Schlyen* v. *Schlyen* (1954) 43 Cal.2d 361, 375 [273 P.2d 897]) approved Bank's sixth annual accounting.[4]

---

[2]Section 2103 provides in full as follows: "(a) Unless reversed on appeal, a judgment, order, or decree made pursuant to this division is final and releases the guardian or conservator and the sureties from all claims of the ward or conservatee and of any persons affected thereby based upon any act or omission directly authorized, approved, or confirmed in the judgment, order, or decree. For the purposes of this section, 'order' includes an order settling an account of the guardian or conservator, whether an intermediate or final account.

"(b) This section does not apply where the judgment, order, or decree is obtained by fraud or conspiracy or by misrepresentation contained in the petition or account or in the judgment, order, or decree as to any material fact. For the purposes of this subdivision, misrepresentation includes but is not limited to, the omission of a material fact."

[3]Jennifer's parents had dissolved their marriage in 1970. Custody of Jennifer was given to her mother.

[4]The probate court expressed concerns about the relationship between guardian Bank and Jennifer's mother and appointed an investigator in its order approving the sixth annual account. The investigator in his report to the probate court noted longstanding differences between Bank and Jennifer's mother.

On March 11, 1982, Bank filed its seventh annual accounting covering the 15-month period from December 1, 1980, through February 25, 1982. On March 26, 1982, Bank filed an addendum covering the period of February 26 through March 18, 1982. The accountings indicated the estate had decreased to approximately $219,000. Jennifer's estate was invested in part in Bank's common trust funds which had declined in value and in part in a single family residence which had appreciated in value.

In July of 1982 Jennifer's paternal grandfather, Walter E. Sorensen, petitioned and was appointed guardian ad litem relating to matters arising out of her trust account. On July 22, 1982, Jennifer filed objections to Bank's seventh annual accounting. That same day she noticed a motion to remove Bank as guardian of the estate. Bank's seventh annual accounting has not been approved by the probate court.

On August 26, 1982, Jennifer filed the underlying civil action in respondent court alleging negligence, fraud, and breach of fiduciary duty.

The cause of action of Jennifer's first amended complaint alleged in pertinent part that Bank negligently and carelessly managed her guardianship account by investing it in its common trust funds which were losing money. As a proximate result of Bank's negligence Jennifer's funds were depleted.

Jennifer's second cause of action alleged in pertinent part that Bank falsely and fraudulently represented to her that Bank's common trust funds would provide an ideal environment for the growth of her funds. Bank had no reasonable grounds to believe its representations were true. Bank knew its trust funds had a rate of return lower than a standard Bank of America savings account.

Jennifer's third cause of action incorporated her first and second causes of action and alleged in pertinent part that Bank held itself out as an expert in the fields of banking and management of trust funds. Bank knew its representations to Jennifer were false. As a proximate result Jennifer relied on Bank's representations and lost money.

Jennifer's fourth cause of action incorporated the first, second, and third causes of action and alleged in pertinent part that Bank made false and fraudulent representations in its sixth annual accounting "that include, but are not limited to, the representation that guardian, BANK OF AMERICA, as guardian and trustee of the trust fund for [Jennifer] had safeguarded the assets contained in the trust account . . . ." The sixth annual accounting was attached as an exhibit to the complaint.

Bank demurred to Jennifer's complaint on the ground, inter alia, her allegations were insufficient to overcome the res judicata effect of section 2103.

On February 25, 1985, the trial court sustained Bank's demurrer without leave to amend as to matters covered by the sixth annual accounting.[5] The trial court concluded it was impossible for plaintiff to plead facts sufficient to avoid res judicata under section 2103, subdivision (b). The court overruled Bank's demurrer except to the extent the amended complaint pled acts or omissions during the period of the sixth annual accounting.

DISCUSSION

I

We first consider Jennifer's contention in her petition for writ of mandate that respondent court erroneously applied the guardianship res judicata provision, section 2103, to sustain Bank's demurrer as to acts and omissions within the period of the sixth annual accounting. ■■■■ The argument lacks merit.[6]

Under subdivision (a) of section 2103, an order settling a guardianship accounting releases the guardian from claims based upon any act or omission directly approved or confirmed in the order. (See fn. 2, *ante*.) The order settling the sixth annual accounting provided in pertinent part, "All transactions made by Guardian during this accounting period, together with retention of the present assets, are approved and allowed; . . ." Unless the res judicata effect of this order is avoided under subdivision (b) of section 2103, the order releases Bank from any liability for claims asserted in Jennifer's complaint related to transactions covered by the sixth annual accounting.

Jennifer does not contend to the contrary. She argues her complaint sufficiently pleaded avoidance of res judicata under subdivision (b) of section

---

[5]Respondent court applied section 2103 prospectively to accord res judicata effect to probate orders rendered on or after its effective date, January 1, 1981. (Stats. 1979, ch. 726.) Only the order settling the sixth annual account dated May 28, 1981, was subject to section 2103. The parties do not dispute the prospective application of the statute.

[6]As we have explained in *Lazzarone* v. *Bank of America* (1986) *ante,* pp. 581, 590 [226 Cal.Rptr. 855], the trial court properly considered matters judicially noticed in ruling on Bank's demurrer. In this case the trial court took judicial notice pursuant to stipulation of the entire guardianship file including the disputed sixth annual accounting. We do likewise on appeal. (Evid. Code, § 459, subd. (a).) The res judicata bar appeared on the face of the documents in that file and was properly raised in Bank's demurrer. (Code Civ. Proc., § 430.30, subd. (a); *Flores* v. *Arroyo* (1961) 56 Cal.2d 492, 496-497 [15 Cal.Rptr. 87, 364 P.2d 263].)

2103. That subdivision provides that judgments, orders, and decrees in guardianship proceedings shall not be given res judicata effect in two types of situations. (See fn. 2, *ante*.) They are (1) "where the judgment, order, or decree is obtained by fraud or conspiracy," and (2) where the judgment, order, or decree is obtained "by misrepresentation contained in the petition or account or in the judgment, order, or decree as to any material fact." (*Ibid.*) We must therefore consider whether Jennifer has alleged facts bringing her action within either of these two provisions.

### A

▇▇▇▇ We begin with the first exception, "where the judgment, order, or decree is obtained by fraud or conspiracy . . . ." Jennifer has not alleged that the order settling the sixth annual accounting was obtained by conspiracy; we therefore focus on whether she has sufficiently alleged it was obtained by fraud. Jennifer contends that in enacting section 2103, subdivision (b), the Legislature intended to allow any fraud by the guardian to avoid the res judicata effect of an order. We cannot agree.

The "fraud" specified in subdivision (b) of section 2103 is fraud *in the obtaining of the order* otherwise subject to res judicata effect. (See *Conservatorship of Harvey* (1970) 3 Cal.3d 646, 651 [91 Cal.Rptr. 510, 477 P.2d 742].)[7] This species of fraud is commonly called "extrinsic" fraud. In *Lazzarone* v. *Bank of America, supra, ante,* at pp. 595-597, we have explained the concept of extrinsic fraud. With the possible exception of her claim of misrepresentation pleaded in her fourth cause of action—a matter we shall discuss in a moment—Jennifer's complaint does not plead extrinsic fraud. ▇▇ ▇▇▇▇▇▇ Jennifer does not contend Bank actively encouraged her not to attend the hearing on the sixth annual account or suggested to

---

[7]The statutory ancestor of current section 2103 is former section 2103 as enacted in 1957, which applied to conservatorships but not to guardianships. (Stats. 1957, ch. 1902, § 1, p. 3318.) Former section 2103 provided: "Any judgment, order or decree of court made pursuant to the provisions of this division, unless reversed on appeal taken under preceding Section 2101, shall be final and shall release the conservator and his sureties from all claims of the conservatee and of any persons affected thereby based upon any act directly authorized, approved or confirmed in the judgment, order or decree. *This release shall not operate in favor of a conservator or a surety where the order was obtained by fraud,* conspiracy or misrepresentation as to any material fact contained therein or in the petition for same." (*Ibid.*; italics added.) In *Conservatorship of Harvey, supra,* 3 Cal.3d 646, our Supreme Court construed former section 2103 as follows: "The Legislature has determined by enacting [former sections 2101 and 2103] whenever an order of a court in conservatorship proceedings has become final, the conservator is released from liability for actions authorized or approved by the order *unless he obtained the order by fraud,* conspiracy, or misrepresentation of a material fact." (P. 651, italics added.) The pertinent language of the current statute is the same. (See fn. 2, *ante*.)

her that it would look out for her interests in that judicial proceeding.[8] (Compare *Estate of Sanders* (1985) 40 Cal.3d 607, 612-613 [221 Cal.Rptr. 432, 710 P.2d 232].) ▉ Jennifer merely claims Bank fraudulently and deceitfully misrepresented its skill and invested her guardianship funds in the poor manner disclosed in the accountings. ▉▉▉ Jennifer admits those accountings revealed the losses sustained by the trust funds.[9] Fraud perpetrated under the pleaded circumstances is not extrinsic because it had no effect on Jennifer's ability to attend the hearing of which she received notice and to litigate in that forum her claims of wrongdoing by Bank. This is so even though Jennifer did not in fact avail herself of the opportunity to appear in court at the hearing on the accounting. (See *Gale v. Witt* (1948) 31 Cal.2d 362, 367 [188 P.2d 755]; *Carr v. Bank of America etc. Assn.* (1938) 11 Cal.2d 366, 373 [79 P.2d 1096, 116 A.L.R. 1282]; *Ringwalt v. Bank of America etc. Assn.* (1935) 3 Cal.2d 680, 684 [45 P.2d 967].) Therefore, Jennifer may not rely on section 2103, subdivision (b)'s "fraud" clause to escape the res judicata effect of Bank's sixth annual accounting.

## B

▉ We next consider section 2103, subdivision (b)'s second exception to its rule of res judicata: "where the judgment, order or decree is obtained . . . by misrepresentation contained in the petition or account or in the judgment, order, or decree as to any material fact." (See fn. 2, *ante.*)

Section 2103, subdivision (b), applies to affirmative misrepresentations and to omissions. It provides in pertinent part that a "misrepresentation" includes, but is not limited to, the omission of a material fact. (*Ibid.*) Under subdivision (b), a guardian or conservator is not entitled to assert a res judicata bar as to transactions which were not fully disclosed to the court in the first proceeding. (See Leg. Com. com. to Prob. Code, § 2103, Deering's Ann. Prob. Code, p. 392.)

Section 2103, subdivision (b), protects potential objectors who are misled by the guardian's misrepresentations into waiving their opportunity to raise

---

[8]The record establishes Jennifer received legal notice of the hearing. At oral argument Jennifer contended, for the first time, that Bank sent notice of the hearings on the accountings only to itself in its capacity as Jennifer's "guardian." Jennifer has waived this contention by failing to raise it in the court below. Assuming the contention is properly before us, however, we find it totally devoid of merit. Bank was appointed guardian of Jennifer's *estate* only; Jennifer's mother has legal custody of her and Bank properly sent the mother notice of the hearing on the sixth annual accounting.

[9]Once having learned her guardianship account sustained losses Jennifer would be placed on notice to investigate the propriety of Bank's performance including its performance vis-à-vis other financial institutions. (*Lazzarone v. Bank of America, supra, ante,* at p. 597.)

objections in the guardianship proceeding. The statute appears to codify the second species of extrinsic fraud discussed in *Lazzarone v. Bank of America, supra, ante,* at page 596. The statute is also analogous to those prohibiting untrue statements of material fact and omissions of material fact in securities transactions. (See Corp. Code, §§ 25401, 25501; *Lynch v. Cook* (1983) 148 Cal.App.3d 1072, 1087 [196 Cal.Rptr. 544]; *Bowden v. Robinson* (1977) 67 Cal.App.3d 705, 717 [136 Cal.Rptr. 871].)

Jennifer attempts to invoke section 2103, subdivision (b)'s second exception by the following allegation in her fourth cause of action: "defendants, . . . falsely and fraudulently and with an intent to deceive and defraud plaintiff, made representations in the Sixth Annual Account and Report of Guardian that include, but are not limited to, the representation that guardian, BANK OF AMERICA, as guardian and trustee of the trust fund for JENNIFER LYN SORENSEN, had safeguarded the assets contained in the trust account of JENNIFER LYN SORENSEN."

The short answer to this allegation is that Bank's sixth annual account and report simply does not contain an assertion that Bank had "safeguarded the assets in the trust account . . . ." Jennifer's allegation thus fails on its facts. We therefore have no occasion to examine the question whether such a representation might be "material" within the meaning of subdivision (b) of section 2103. (But see *Lazzarone v. Bank of America, supra, ante,* at p. 581.)

As we have noted, Jennifer alleged "defendants, . . . made representations . . . that *include, but are not limited to,*" the representation Bank safeguarded the trust account's assets. (Italics added.) Presumably, Jennifer is alleging Bank also made other representations in the sixth annual account which she has not pleaded. A general allegation that representations were made is insufficient to overcome a demurrer. ■ Facts constituting fraud must ordinarily be pleaded with particularity and we believe the rule is properly applied to allegations of material misrepresentations as well. (*Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 216 [197 Cal.Rptr. 783, 673 P.2d 660]; *Lazzarone v. Bank of America, supra, ante,* at p. 598.) While the rule is not always applied with rigor (*Committee on Children's Television, Inc., supra,* at p. 217), we believe it is appropriately invoked where a plaintiff seeks damages with respect to matters previously heard in probate. A lax rule allowing the vague pleading of allegedly material misrepresentations would open the door to the wholesale avoidance of probate proceedings and to the relitigation on the law side of the court matters properly heard and resolved in probate.

■ We conclude respondent court properly applied section 2103 to sustain Bank's demurrer as to acts and omissions within the period of the

sixth annual accounting. We next consider whether the demurrer should have been sustained without leave to amend.

## C

■ Where a demurrer is sustained without leave to amend we must decide "whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] *The burden of proving such reasonable possibility is squarely on the plaintiff.* [Citation.]" (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58], italics added; *Lazzarone* v. *Bank of America, supra, ante,* at p. 589, fn. 5.)

■ Jennifer has not suggested how she can possibly amend her complaint to allege extrinsic fraud which prevented her participation in the proceeding on the sixth annual account or otherwise deprived her of an opportunity to present any claims of misconduct she might have had. Nor has she suggested she can amend her complaint to allege material representations in Bank's sixth annual accounting. Rather, it is apparent Jennifer's claims of misconduct all culminate in the losses sustained by Bank's common trust funds. These losses were fully disclosed in the prior accounting. Issues surrounding those losses could and should have been litigated in the prior proceeding. On this record it is not reasonably possible Jennifer's complaint can be salvaged by amendment. Thus, the trial court did not err in sustaining Bank's demurrer without leave to amend. (*Blank* v. *Kirwan, supra,* 39 Cal.3d at p. 318.)

## II

■ We turn to Bank's contention the balance of Jennifer's claims should be heard in the probate court. For the reasons which follow, we agree.

Jennifer is alleging misconduct by Bank in its capacity as guardian of her estate. By statute, a guardian is subject to the regulation and control of the probate court in its performance of the duties of its office. (§ 2102; see former § 1400, Stats. 1931, ch. 281, § 1400; *Browne* v. *Superior Court* (1940) 16 Cal.2d 593, 597-598 [107 P.2d 1, 131 A.L.R. 276]; *Guardianship of Tulley* (1978) 83 Cal.App.3d 698, 705 [146 Cal.Rptr. 266]; *Guardianship of Kemp* (1974) 43 Cal.App.3d 758, 761 [118 Cal.Rptr. 64, 74 A.L.R.3d 1202].)

Jennifer's guardianship is ongoing and has not been terminated by the probate court. ■ Guardianships proceed in at least two distinct stages,

the first being the petition brought to establish the incompetency of the ward and to obtain the appointment of a guardian. (*Browne* v. *Superior Court, supra,* 16 Cal.2d at p. 597; 7 Witkin, Summary of Cal. Law (8th ed. 1974) Wills and Probate, §§ 549-557.) When that is concluded the second stage is reached where the guardian undertakes the duties of providing for the ward and administering his affairs. (*Browne, supra,* at p. 597.) This second stage is not concluded until the discharge of the guardian. (*Id.,* at p. 598.) During the pendency of the second stage the probate court's jurisdiction is a continuing one; no other court has power to interfere with that continuing control over the guardian or to approve his accounting or to instruct him as to his duties. (*Ibid.; Guardianship of Tulley, supra,* 83 Cal.App.3d at p. 705; *Guardianship of Kemp, supra,* 43 Cal.App.3d at p. 761.) ██ Thus, only the probate court which appointed Bank as guardian is empowered to consider Jennifer's contentions Bank has been remiss in its duties.

██ Where a superior court refuses to recognize exclusive jurisdiction of a different superior court an appropriate remedy is by way of extraordinary writ. (*Browne* v. *Superior Court, supra,* 16 Cal.2d at p. 597, 602; *Lawyers Title Ins. Corp.* v. *Superior Court* (1984) 151 Cal.App.3d 455, 460 [199 Cal.Rptr. 1].) ██ However, Jennifer contends Bank is not entitled to relief in this writ proceeding because it unreasonably delayed seeking relief from this court. We disagree. Jennifer claims Bank should have sought writ relief from the 1983 order overruling its demurrer to Jennifer's original complaint instead of raising the identical issue following its demurrer to the first amended complaint. However, by filing an amended complaint Jennifer assumed the risk that matters alleged therein would be challenged by her opponent. Bank did not unreasonably delay in seeking writ relief following the trial court's overruling its demurrer to the first amended complaint. Jennifer's allegation Bank is guilty of laches must fail.

Moreover, Jennifer's alleged fears that a judgment of dismissal would preclude her airing her grievances in any forum is misplaced; as we have noted, the proper remedy is for her to address her surviving claims to the court which appointed and now supervises the guardian. (*Browne* v. *Superior Court, supra,* 16 Cal.2d at p. 602.) Our writ will direct the transfer of Jennifer's surviving claims to the probate court. (See *Schlyen* v. *Schlyen, supra,* 43 Cal.2d at p. 378.) Thus, even assuming arguendo the statute of limitations would bar Jennifer from bringing a new action it will not be necessary for her to do so.

██ Jennifer claimed at oral argument that this case should be heard on the law side of the court so that punitive damages would be available to regulate the conduct of guardians.

There are two answers to Jennifer's contention. The first is that such a result is precluded by statute and by rulings of our Supreme Court, which are binding upon this court. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) Guardians are subject to the continuing jurisdiction of the appointing probate court. (§ 2102; *Browne* v. *Superior Court, supra,* 16 Cal.2d at p. 598.) We therefore have no authority to allow this matter to proceed outside of probate.

Nor do we have authority to authorize a remedy of punitive damages in the probate court. The Probate Code sets forth procedures for the settlement of guardians' annual accounts and objections thereto. (§§ 2610-2625.) The Probate Code also establishes a procedure whereby a hearing may be had concerning the wrongful disposal of any property of the ward by any named person. (§ 2616.) These statutes do not authorize an award of punitive damages against a guardian. Our Supreme Court has held numerous times that the appropriate remedy for losses caused the guardianship estate by the wrongdoing of a guardian is to order the guardian to reimburse the estate for its losses, together with legal interest compounded annually. (See, e.g., *Graver* v. *Early* (1923) 191 Cal. 123, 126-127 [215 P. 394]; *Glassell* v. *Glassell* (1905) 147 Cal. 510, 512-513 [82 P. 42]; *Estate of Hamilton* (1903) 139 Cal. 671, 672 [73 P. 578]; *Guardianship of Dow* (1901) 133 Cal. 446, 450 [65 P. 890].) In the absence of statutory authority we have no power to fashion a remedy at odds with that approved by our Supreme Court.

The second answer is that, even if we were free to consider the issue, we would not conclude punitive damages are necessary to regulate conduct of guardians. The probate court is empowered to impose surcharges on guardians sufficient to compensate for all economic losses suffered by the guardianship estate as a consequence of a guardian's wrongdoing. (*Estate of Hamilton, supra,* 139 Cal. at p. 672; see also *Estate of Gump* (1982) 128 Cal.App.3d 111, 116 [180 Cal.Rptr. 219].) Plaintiff has not shown that the present system of ongoing guardian supervision by probate courts is inadequate to regulate guardian conduct. In the absence of a clear showing that court supervision is ineffective, we would be unwilling to subject guardians to the volatile remedy of punitive damages. We believe such exposure would discourage many from serving as guardians and would inevitably result in significant increases in the fees allowed to guardians for their services. (See Note, *Punitive Damages in Mass-Marketed Product Litigation* (1981) 14 Loyola U.L.Rev. 405, fns. 2, 3, and authorities cited; *Roginsky* v. *Richardson-Merrell, Inc.* (2d Cir. 1967) 378 F.2d 832, 839 [danger of numerous claims for punitive damages].)

We conclude Jennifer's surviving claims are properly heard in probate.

## DISPOSITION[10]

In 3 Civil No. 24959, let a peremptory writ of mandate issue directing respondent Superior Court of Sacramento County to vacate its order overruling in part petitioner's demurrer to the first amended complaint of real party in interest and to enter a new order sustaining the demurrer. Respondent court is directed to transfer the matter to a department authorized to hear the matter in probate.

In 3 Civil No. 25023, the alternative writ previously issued is discharged.

Sparks, Acting P. J., concurred.

A petition for a rehearing was denied June 23, 1986.

---

[10]Justice Regan heard oral argument in this matter but recused himself from consideration of the cause on account of circumstances arising after oral argument.