[No. B215265. Second Dist., Div. Two. Mar. 9, 2010.]

RICHARD HOPP, Plaintiff and Appellant, v.
CITY OF LOS ANGELES, Defendant and Respondent.

**COUNSEL**

David A. Cordier for Plaintiff and Appellant.

Carmen A. Trutanich, City Attorney, Laurie Rittenberg, Assistant City Attorney, and Gabriel S. Dermer, Deputy City Attorney, for Defendant and Respondent.

OPINION

**BOREN, P. J.**—A municipal ordinance requires a police permit for persons in "the business of buying, selling, exchanging or otherwise dealing in secondhand books." A hobbyist who collects secondhand books for his personal use—and not for resale—has brought a lawsuit for declaratory relief, challenging the municipality's claim that he must obtain a police permit for his collecting activities. The trial court granted the municipality's motion for judgment on the pleadings, finding that the hobbyist is a "secondhand book dealer" within the meaning of the ordinance.

■ After conducting an independent review, we conclude that the complaint states a cause of action for declaratory relief. The ordinance is directed at persons who engage in a commercial activity—both buying and selling—with a view to profit. Someone who simply collects books for personal enjoyment is not a "secondhand book dealer." Accordingly, we reverse the judgment in favor of the municipality.

## FACTS

Richard Hopp resides in the City of Los Angeles (the City). As a hobby, Hopp collects "books, documents, and ephemera." Hopp purchases the books, documents and ephemera for his personal use: they are not resold, though he "may recycle and/or donate" unwanted items.

Hopp "actively promotes, advertises, and campaigns his collecting and hobby activities within publications, websites, and at various events and locations, including . . . exhibitions, festivals, meetings, flea markets, swap meets, trade shows, garage sales, and collector meetings." He wants to have an "exhibitor's table" or "buying booth" at these events in the City, to let people know that he is interested in purchasing books, documents and ephemera.

The City's police department informed Hopp that he must obtain a permit for his collecting activities. The City's insistence on a permit is based on a municipal ordinance regulating secondhand bookdealers. Hopp resisted the City's demand that he obtain a police permit, on the grounds that he is a book collector, not a bookseller.

Hopp brought a declaratory relief action against the City. He alleges that an actual controversy has arisen between him and the City regarding their respective rights and duties. He maintains that the City's ordinance regulating secondhand bookdealers does not apply to him, or is preempted by state law.

Hopp seeks judicial intervention because he may be subject to criminal prosecution unless it is determined that the City's ordinance is inapplicable or invalid.

The City moved for judgment on the pleadings. Hopp filed an opposition. The trial court granted the motion, and gave judgment to the City. Hopp's appeal from the judgment is timely.

## DISCUSSION

### 1. *Standards of Review and Statutory Interpretation*

The trial court granted judgment on the pleadings. (Code Civ. Proc., § 438.) A motion for judgment on the pleadings is equivalent to a general demurrer, and the courts treat all properly pleaded material facts in the complaint as true. (*Kapsimallis v. Allstate Ins. Co.* (2002) 104 Cal.App.4th 667, 672 [128 Cal.Rptr.2d 358].) We are not bound by the trial court's determination. Instead, we review the matter de novo, and render an independent judgment on whether a cause of action has been stated. (*Ibid.*; *Lance Camper Manufacturing Corp. v. Republic Indemnity Co.* (1996) 44 Cal.App.4th 194, 198 [51 Cal.Rptr.2d 622]; *Stevenson Real Estate Services, Inc. v. CB Richard Ellis Real Estate Services, Inc.* (2006) 138 Cal.App.4th 1215, 1220 [42 Cal.Rptr.3d 235].)

When interpreting a law, we begin by examining the statutory language, giving the words their usual and ordinary meaning. If there is no ambiguity, the plain meaning of the language governs. If the language is ambiguous, "then we may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history. [Citation.] In such circumstances, we ' "select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." ' " (*Day v. City of Fontana* (2001) 25 Cal.4th 268, 272 [105 Cal.Rptr.2d 457, 19 P.3d 1196].)

### 2. *The City's Ordinance*

The City regulates "secondhand book dealers." Secondhand bookdealers are defined as persons "engaging in, conducting, managing or carrying on the business of buying, selling, exchanging or otherwise dealing in secondhand books and magazines, secondhand text books or secondhand educational materials." A person cannot "carry on the business of secondhand book dealer without a written permit" from the City's board of police commissioners. (L.A. Mun. Code (LAMC), § 103.310, subds. (a), (b).)

■ Secondhand bookdealers are required to execute a bill of sale showing the date of purchase, the name and address of the seller, and the name of the purchaser receiving the secondhand books, and describing the books in an identifiable manner. A secondhand bookdealer must "ascertain that the person selling or delivering for exchange any such secondhand books or materials has a legal right to do so." Upon purchasing secondhand books, the dealer must stamp, write, print or permanently affix to each article the number of the bill of sale covering the purchase. (LAMC, § 103.310, subds. (d), (e), (f), (g).)

### 3. A "Business" Is Commercial Activity Carried on with a View to Profit

The City argues that its ordinance applies to people who purchase *or* sell secondhand books. In the City's view, a collector who acquires used books for personal enjoyment is as much a "secondhand book dealer" as someone who purchases used books for resale. The City takes this position even though the ordinance expressly applies to those who engage in, conduct, manage, or carry on "the business" of dealing in secondhand books. (LAMC, § 103.310, subd. (a)(1).)

■ City law relating to police permits defines the term "business." A business "means any occupation, trade, establishment or concern, regardless of form, which provides services, products or entertainment for which a permit is required under this article . . . ." (LAMC, § 103.01.) Thus, City law acknowledges that a business is a commercial activity that "provides" services, products or entertainment—necessarily to others, because one does not "provide" services or goods to oneself. Purchasing a secondhand book at a swap meet, and entertaining oneself while reading it, is not a "business."

The City ordinance defining a "business" is consistent with the language used in appellate court opinions. The term " 'ordinarily means a business in the trade or commercial sense, one carried on with a view to profit or livelihood.' " (*Union League Club v. Johnson* (1941) 18 Cal.2d 275, 278 [115 P.2d 425].) "*Business* in its broad sense embraces everything about which one can be employed; the word is often synonymous with calling, occupation, or trade engaged in for the purpose of obtaining a livelihood or profit or gain." (*Long v. City of Anaheim* (1967) 255 Cal.App.2d 191, 197 [63 Cal.Rptr. 56]; *Burks v. Poppy Construction Co.* (1962) 57 Cal.2d 463, 468 [20 Cal.Rptr. 609, 370 P.2d 313].) Although business activities may result in a loss instead of a profit, "it is essential that livelihood or profit be at least one of the purposes for which the employment is pursued, in order to bring it within the accepted definition of the word . . . ." (*Deering v. Blair* (D.C. Cir. 1928) 57 U.S. App.D.C. 367 [23 F.2d 975, 976].)

■ Dictionary definitions echo the concept that a "business" is a money-making endeavor. It is defined as "Employment, occupation, profession, or commercial activity engaged in for gain or livelihood. Activity or enterprise for gain, benefit, advantage or livelihood. . . . Enterprise in which person engaged shows willingness to invest time and capital on future outcome. . . . That which habitually busies or occupies or engages the time, attention, labor, and effort of persons as a principal serious concern or interest or for livelihood or profit." (Black's Law Dict. (6th ed. 1990) p. 198, citations omitted.) Another dictionary defines "business" as: "The occupation, work, or trade in which a person is engaged . . . . A specific occupation or pursuit . . . . Commercial, industrial, or professional dealings . . . ." (American Heritage Dict. (2d college ed. 1982) p. 220.) A hobby that involves book collecting is not a "business."

### 4. A "Dealer" Is One Who Buys and Sells

The City's ordinance regulates "secondhand book dealers." A "dealer" is "One that is engaged in buying and selling." (American Heritage Dict., *supra*, at p. 369.) "In the popular sense, one who buys to sell; not one who buys to keep, or makes to sell. One who purchases goods or property for resale to final customers; a retailer." (Black's Law Dict., *supra*, at p. 399.)

■ State legislation consistently defines a "dealer" as a seller of goods. For example: a dealer "means a person who is in the business of selling or offering for sale collectibles in or from this state" and "includes an auctioneer who sells collectibles at a public auction" (Civ. Code, § 1739.7, subd. (a)(4)); it is a person who is licensed to sell firearms (Pen. Code, § 12071); it is "every person who engages in the sale of lead acid batteries directly to consumers" (Health & Saf. Code, § 25215.1, subd. (b)); it is a person or entity recognized by manufacturers "as a provider or retail outlet for its line of incontinence medical supplies, and which provide these supplies directly to consumers. The term 'dealer' includes a retailer" (Welf. & Inst. Code, § 14125.1, subd. (e)); it is someone who "[f]or commission, money, or other thing of value, sells, exchanges, buys, or offers for sale, negotiates or attempts to negotiate, a sale or exchange of an interest in, a vehicle subject to registration . . ." (Veh. Code, § 285, subd. (a)); it is every person "who engages in this state in the sale of cigarettes or tobacco products" (Rev. & Tax. Code, § 30012); it is someone who negotiates "a sale or exchange of an interest in a manufactured home, mobilehome, or commercial coach" (Health & Saf. Code, § 18002.6, subd. (a)(1)), *excluding* persons who do not purchase or sell manufactured homes "as a business" (*id.*, subd. (b)(5)); and it is "a retail establishment which offers the sale of beverages in beverage containers to consumers" (Pub. Resources Code, § 14510).

### 5. Collecting Used Books for Personal Enjoyment Is Not a "Business" and Hopp Is Not a "Dealer" in Secondhand Books

Hopp's complaint alleges that he does not resell the used books he purchases. This is a material fact we must accept as true when reviewing a motion for judgment on the pleadings. For purposes of this motion, the City concedes that "Hopp does not sell what he collects . . . ."

Given the undisputed facts, there is no basis for finding that Hopp's purchase of used books for personal enjoyment constitutes a "business" within the meaning of LAMC section 103.310, subdivision (a). At this stage of the proceedings, no evidence has been developed that this is Hopp's "business," i.e., a trade, occupation or employment, engaged in for the purpose of obtaining a livelihood, profit or monetary gain. For the same reasons, there is no basis for finding that Hopp is a "dealer" engaged in buying and reselling goods to final customers. Instead, he purchases items to keep. If the City can develop evidence that Hopp is not merely a purchaser and collector of secondhand books, and that he is reselling these items, then the City has a right to insist that Hopp obtain a police permit. In other words, if Hopp's "buying booth" at City events becomes a "selling booth," then Hopp will run afoul of LAMC section 103.310.

Our conclusion is a matter of logic and common sense. Many people purchase secondhand books for their personal use and enjoyment—at bookstores specializing in used books, at public library book fairs, at yard sales, at swap meets, or on the Internet. New lawyers may want to purchase a set of annotated California codes from a retiring lawyer. Under the City's interpretation of its ordinance, all of these secondhand books purchasers must obtain a police permit from the City, even if they have no intention of reselling the books. The ordinance cannot bear the weight of such an absurd result.

The City relies upon *In re Holmes* (1921) 187 Cal. 640 [203 P. 398], for the proposition that a secondhand bookdealer is required to have a City permit. *Holmes* is factually inapposite: it was "*stipulated* that [Holmes] is engaged in the business of buying, *selling, and exchanging* second-hand books, not as a mere incident to some other occupation, but *as his principal business*." (*Id.* at pp. 644–645, italics added.) If the undisputed facts of this case showed that Hopp bought and sold secondhand books as his principal business, the outcome of this appeal would be entirely different. Because the complaint alleges that Hopp does not sell books, *Holmes* does not assist the City's case.

The City argues that it is merely trying to curtail crime and prevent used book purchasers from becoming "fences."[1] The Supreme Court addressed this point in *In re Holmes*: "The business of buying and selling second-hand books cannot be differentiated from the business of buying and selling other forms of second-hand personal property which, being movable, valuable, and passing easily from hand to hand, are often made the subject of purloining and petit larceny and of disposal in second-hand places of business. Such places of business have, therefore, been made the proper subjects of police inspection and regulation." (*In re Holmes, supra,* 187 Cal. at p. 645.) The critical point is that secondhand bookdealers may accept stolen goods then sell these goods as part of their business. Hopp alleges that he is not selling books, so the City's concern that he is a "fence" is misplaced, unless it can prove that he is accepting stolen goods.

In any event, state law imposes criminal penalties on dealers or collectors who buy or receive secondhand books, manuscripts, maps, charts or other works of literature bearing any mark or indicia of ownership by a public library, college or university "without ascertaining by diligent inquiry that the person selling or delivering the same has a legal right to do so." (Pen. Code, § 496b.) The City apparently seeks to go well beyond state law and impose onerous duties of inquiry upon individuals purchasing dog-eared novels at garage sales, even if the books have no indicia of ownership by a library or educational institution.

The City claims that it is not seeking to impose the permit requirement on people who "want[] to buy one book, or even 1,000 books"—so long as they do so quietly and privately. Hopp came to the City's attention because he "publicly" and "actively" promotes his book collecting activities. No valid distinction can be drawn between book collectors who go about their hobby in a quiet manner and those who do so with overt enthusiasm. If Hopp should start advertising the sale of his books, it would make him a secondhand bookdealer, and the City could demand proof that the items have been properly identified and legitimately obtained.

## CONCLUSION

Based on the allegations in appellant's complaint, which show that appellant is a hobbyist who collects books—but does not sell the books he collects—we conclude that appellant has stated a cause of action for declaratory relief. Persons who merely collect books for personal use, and not for resale, are not required to obtain a secondhand bookdealer permit from the

---

[1] A "fence" is "[a] colloquial characterization of a receiver of stolen property; one who receives and sells stolen goods." (Black's Law Dict., *supra,* at p. 618.)

City of Los Angeles. LAMC section 103.310 does not apply to appellant, based on the facts alleged here. In light of our conclusion, we do not reach appellant's argument that the ordinance is preempted by state law.

## DISPOSITION

The judgment is reversed. Appellant Hopp is awarded his costs on appeal.

Doi Todd, J., and Ashmann-Gerst, J., concurred.