Filed 8/22/18

**CERTIFIED FOR PUBLICATION**


**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**


| | |
|---|---|
| Conservatorship of the Person and Estate of LORRAINE PRESHA. | |
| CHRISTIE DAVIDSON, as Conservator, etc., | E066177 |
| Petitioner and Appellant, | (Super.Ct.No. RIP094861) |
| v. | OPINION |
| GEORGE G. HOLMAN et al., | |
| Objectors and Respondents.. | |


APPEAL from the Superior Court of Riverside County.  Thomas H. Cahraman, Judge.  Affirmed.

Horspool & Horspool and Karin E. Horspool for Petitioner and Appellant.

No appearance for Objectors and Respondents.

Petitioner and appellant Christine Davidson was the court-appointed conservator of the person and estate of Lorraine Presha from 2009 to 2015.  Presha died in March 2015.  In June 2015, Davidson filed a combined petition for (1) approval of the sixth

1

and final accounting, and (2) conservator's fees. Davidson sought conservator's fees in the amount of $12,621.60. The probate court ordered conservator's fees in the amount of $7,000.

Davidson contends the trial court erred by (1) examining Davidson's billing practices; (2) utilizing its finding that Davidson's billing practices were improper when ruling upon Davidson's petition for compensation; (3) vitiating the finality of prior cases for which Davidson served as the conservator; and (4) not utilizing the enumerated factors when ruling on her petition for compensation. We affirm the judgment.

## FACTUAL AND PROCEDURAL HISTORY

### A.    PETITION

In 2009, Davidson was appointed by the probate court to be the conservator of the person and estate of Presha. Presha died in March 2015. Davidson was a professional fiduciary. Davidson petitioned the probate court for conservator's fees in the amount of $12,621.60 for the period of June 2, 2014, through March 31, 2015.

### B.    SEPTEMBER 2015 HEARING

On September 24, 2015, the probate court held a hearing on Davidson's petition for fees. The probate court explained it had not gone through every entry in Davidson's bill, but it had concerns with some of the entries it had reviewed. The probate court said, "Page 17 of Ms. Davidson's bill, 'Received, reviewed, and filed. Notice of changes from Security Bank, re in form of changes in bank fees, terms, and effective date, two-tenths of an hour at $60 an hour, $12.' [¶] Well, in reading billings like this,

2

the Court doesn't want to be petty or feel petty, but we all get that little slip of paper once in a while from the bank that says, 'We have exciting new changes to the terms of your account.' And then you look at it and what they have done is increased the punishment for a bounced check from $20 to $22. We all glance at those papers and we throw them away. Why this estate has to pay $12 for glancing at that and throwing it away is a big question."

The probate court went on to question why fees were being charged for confirming that a bank statement went to the correct mailing address when it was clear Davidson received the bank statement. The court questioned why Davidson charged for meeting with a financial advisor to discuss how laws related to the "Affordable Care Act" taxes would affect her clients. The court explained that it is beneficial to be educated, but that is not the type of activity that should be billed to a client. The court said, "I wonder if this appears in 30 clients' billings or a hundred clients' billing[s]." The court said, "I worry about this. It's a hypothesis that makes me worry. I'm not sure that there's something going on. I'm not sure, but it's concerning when you read this."

The court questioned Davidson's charge for 24 minutes for taking a check to the bank. The court asked, "Is that the only check she took the bank? Or did she take a hundred checks from a hundred clients? In which case, it was four hours billed if you add them all up, and did it take four hours to go to the bank? Or did she do the foolishness of taking this [one] check[?]"

Davidson's attorney, J. David Horspool, said, "The problem is obviously, if I knew this was an issue, I would have Ms. Davidson here to address it." Horspool said,

3

"I would submit that if you go back and look at all the other billings Ms. Davidson has submitted on other files, you will see similar entries, which have previously been approved by the Court."

The probate court said, "It's under submission. I will either do something in my office or I will reset it so she can be heard. If you tell me you prefer it to be reset instead of doing it that way, I will just reset it. I'll do it either way you want." Horspool said, "If the Court is going to reduce her fee, give us a tentative, and set a court hearing. If we are willing to just accept it, then we'll let the probate examiners know and submit a revised order." The probate court agreed, saying, "[T]he fees of the conservator [are] under submission. The Court will proceed by tentative decision and then set for hearing if requested."

C.      INQUIRY

In November 2015, the probate court issued a minute order reflecting, "The order taking the fees of conservator under submission is vacated. The court has expanded its inquiry pursuant to the statutory au[thority] set forth in [subdivision] (d) of section 2620 of the Probate Code[1] and believes that the testimony of Ms. Davidson is important to decide the issue of fees." The court scheduled a hearing for December 15, 2015.

D.      DECEMBER 2015 HEARING

At the hearing on December 15, the probate court explained that it would not have Davidson testify that day, as a courtesy, because the court had new information to

---

[1] All subsequent statutory references will be to the Probate Code unless otherwise indicated.

4

discuss. The court explained that under section 2620, subdivision (d), the court "took the step of having [its] staff look [at] and submit to [the court] some accountings in other cases."

The court said, "And so we studied 15 cases of Ms. Davidson in San Bernardino and Riverside counties. And, for instance, the telephone call of September 6th, 2013, there were eight disabled people in eight separate cases billed two-tenths of an hour for receiving telephone calls from representatives from Security Bank . . . ; so 1.6 hours [were] billed if you count all of these disabled people for that call. [¶] Now, it may be that six different offices of Security Bank were used or eight different offices were used and it was eight different phone calls. I don't know."

The probate court pointed to a similar issue with a charge for traveling to Security Bank and meeting with a manager. Eight clients were billed for a total of 3.6 hours. The court explained it was possible the meeting and travel lasted 3.6 hours, so each client was billed proportionally, but the court was uncertain. The court explained, "And it goes on and on like this." The court cited a conference call that was billed to eight clients for a total of 1.8 hours, another bank meeting that was billed for a total of 5.4 hours, and a telephone call that was billed to 10 clients for a total of two hours.

The court said, "But once we did this study, it seemed like something might be deeply wrong." The court continued, "[W]hen we studied 15 cases and it looks very much like there's redundant billing of eight different people who are absolutely helpless [and/or] incompetent, that one phone call seems to have been made that two-tenths of an hour and eight different people got charged for it, if that's not what happened I really

5

am going to want to know. [¶] . . . I'm really hoping there's some other explanation. But tentatively it looks pretty bad."

The court recessed the case and then recalled it so Davidson would have time to consider the court's comments. Horspool explained that only three of the charges cited by the court were part of the current bill, while others were part of old bills that had already been approved. Horspool said, "I think the Court is reading Subsection (d) Section 2620 too broadly."

The court responded, "I really disagree. I think that if dishonest billings were made in other cases, it's absolutely something that should be considered in this case. The Court can look at anything under that subsection to see if a fiduciary is truly putting [the] interest of these disabled people ahead of her own interest." The court explained that Davidson's bills from other cases are "all evidence that can be taken into account as to whether the fee request in this case is reasonable and as to whether disciplinary proceedings should be recommended by somebody interested in this case based upon all this."

The probate court ordered Davidson to respond to the court's concerns, via a declaration, within 30 days. The probate court's order provided citations of the 15 cases and the possible duplicative charges.

E.     RESPONSE TO THE ORDER

Davidson filed a verified response to the probate court's order. Davidson asserted her fees were reasonable. Davidson asserted the accountings were approved in the 15 other cases cited by the probate court. Davidson wrote, "It is unclear to

6

[Davidson] under what authority the court has [*sic*] to go back and review approved accountings and fee petitions, especially ones approved in another Court, and question [Davidson] about her billing entries in those cases. As those matters are not before this Court, and have been previously approved by this Court and other courts, [Davidson's] position is that she is not required to address any of the other billing entries that do not pertain to her current fee petition, especially since they have already been approved." Further, Davidson argued section 2620, subdivision (d), applied only to accountings, not to petitions for conservator's fees.

F.     <u>JANUARY 2016 HEARING</u>

The court held a hearing on January 27, 2016, concerning Davidson's response to the court's order. The court asked if Davidson intended to offer evidence, such as Davidson's testimony. Horspool said he did not intend to provide further evidence because Davidson's testimony would be similar to the verified response.

The court said it would like to know, for the aggregate 8.4 hours that were billed for a conference with a banker, how many hours Davidson would testify she spent at the bank and traveling for the conference. The court asked Horspool, "Do you want her to tell me that, or do you want me to reach my own conclusions based on what I have?" Horspool responded, "Your Honor, she really doesn't have anything more to say." The court took the matter under submission.

G.     <u>TENTATIVE RULING</u>

In March 2016, the probate court issued a tentative ruling. The court approved conservator's fees in the reduced amount of $7,000. The court wrote, "Pursuant to

7

subsection (d) of section 2620 of the Probate Code, the court finds that there were 'material errors' in the portion of the accounting that consists of conservator's billing, and that the severity level of the errors is substantial."

The court concluded that appellate cases provided authority for a probate court to raise objections to fee petitions on the court's own motion. The probate court took judicial notice of the 15 cases cited in its December 2015 order. (Evid. Code, § 452, subd. (d).) The court explained that Probate Code section 2620, subdivision (d), permits the court to consider "any information" when determining the accuracy of an accounting, and therefore, the court reasoned it could rely upon judicially noticed court records. The court explained that the court records were evidence of habit or custom. (Evid. Code, § 1105.)

The court explained that Davidson's response to the court's order failed to disclose the actual time she spent on any of the allegedly duplicative entries. The probate court found Davidson charged multiple clients for the same act without prorating the time among the clients and that she had overcharged Presha by assigning too much time to certain tasks, e.g., charging for 24 minutes to read a CalPers statement and make a checkbook entry. The probate court also faulted Davidson for performing many of the clerical tasks herself, rather than using a less expensive office assistant for such tasks. The probate court found Davidson's "practice of billing multiple clients for the same task was no accident, but rather a true business habit."

The probate court explained that to the extent Davidson's bills appeared wrongful due to ambiguities in the bills, then the resolution of the ambiguity would be

8

made against Davidson because Davidson was responsible for creating the ambiguity. In regard to Davidson's argument that section 2620 does not apply to a petition for conservator's fees, the probate court wrote, "This breathtaking assertion falls flat, if only because the prayer of this particular accounting requests that [Davidson's] bill be paid." The probate court concluded $700 per month would adequately compensate Davidson, plus an additional $700 for the time spent on tasks related to Presha's death.

## H.     RESPONSE TO THE TENTATIVE RULING

Davidson filed a verified response to the probate court's tentative ruling. Davidson asserted the probate court misapplied section 2620, subdivision (d), because the subdivision applies to accountings, not to petitions for conservator's fees. Davidson argued the petition for fees was not part of the accounting. Davidson asserted that if she had paid herself during part of the accounting period, then section 2620 might apply, but because Davidson's fees were not included in the accounting, it was improper to apply section 2620 to Davidson's request for conservator's fees. Davidson asserted that her request for fees, in the prayer portion of the accounting approval petition, did not mean her fee request was part of the accounting. Davidson accused the probate court of "attempting to bootstrap the fee petition [in]to the accounting to justify it's [*sic*] actions." Davidson asserted the probate court "acted outside the scope of its authority by reviewing 15 other non-related cases to determine what the court believed was just and reasonable compensation in this case."

Davidson argued, "it was inappropriate for the court to initiate it's [*sic*] own investigation into [Davidson's] billing practices." Davidson asserted the probate court

9

failed to provide her adequate notice of its intent to take judicial notice of the 15 cases. Further, Davidson asserted the probate court misunderstood her billing practices. Davidson explained that entries included not only the stated activity but also the related follow-up activity. For example, a meeting at the bank for which 11 clients were charged .70 of an hour included the meeting and follow-up activities related to the meeting. Davidson contended the probate court reduced Davidson's fees to $700 per month so as to punish Davidson for her alleged misdeeds.

I.     STATEMENT OF DECISION AND ORDER

The probate court adopted the tentative ruling as its statement of decision, with two additions. First, in regard to the assertion that the probate court failed to provide notice of its intent to take judicial notice of the 15 cases, the probate court explained that it issued an order requiring a response, then held a hearing, and then issued a tentative ruling reflecting its intent to take judicial notice of the 15 cases. The probate court asserted Davidson was provided sufficient notice of the court's intent to take judicial notice of the cases.

Second, in regard to the argument that the probate court reduced Davidson's fees for the purpose of punishing Davidson, the court explained that Davidson's fee request was excessive and reflected improper billing practices. The probate court concluded that $700 per month was fair compensation for the services rendered given the lack of reliable information provided by Davidson. The court issued an order granting fees to Davidson in the amount of $7,000.

10

## DISCUSSION

A.     SECTION 2620

1.     *STATUTORY INTERPRETATION*

Davidson contends section 2620 does not permit the probate court to examine a conservator's billing practices.[2]

We apply the de novo standard when interpreting a statute. "[W]e begin by examining the statutory language, giving the words their usual and ordinary meaning. If there is no ambiguity, the plain meaning of the language governs." (*Hopp v. City of Los Angeles* (2010) 183 Cal.App.4th 713, 717.)

Section 2620, subdivision (d), provides, in relevant part, "Each accounting is subject to random or discretionary, full or partial reviews by the court. The review may include consideration of any information necessary to determine the accuracy of the accounting." The plain language of the subdivision reflects that it applies to an accounting in that the statute plainly uses "accounting," as opposed to a more generic term, such as "petition."

The contents of an accounting include any property on hand at the beginning of the accounting period, the value of any assets received, the amount of any income, any gains on sales, the amount of any disbursements, any losses on sales, any distributions,

---

[2] At the initial hearing on Davidson's petition for compensation, Horspool said to the probate court, "I would submit that if you go back and look at all the other billings Ms. Davidson has submitted on other files, you will see similar entries, which have previously been approved by the Court." Thus, Horspool invited the probate court to examine Davidson's other petitions for compensation. Nevertheless, we will address the merits of Davidson's contention.

11

and any property on hand at the end of the accounting period. (§ 1061.) A conservator's fees are not included on the list of items that are contained in an accounting.

Moreover, section 1064 pertains to the contents for a petition for approval of an accounting, while section 2640 pertains to a petition for conservator compensation. Thus, the law considers such petitions to be separate documents, and a conservator's fees are not included in an accounting. Accordingly, a petition for approval of an accounting does not include conservator's fees and an accounting does not include conservator's fees. Because section 2620, subdivision (d), applies to an accounting, it does not apply to a petition for conservator compensation.

The probate court concluded section 2620, subdivision (d), could apply in this case because Davidson filed one petition in which she combined (1) the request for approval of the accounting, with (2) the request for conservator's fees. Section 2620 plainly applies to an accounting, as discussed *ante*. Davidson inartfully drafted her petition by combining two petitions into one. (§§ 1064, 2640.) Davidson's inartful drafting does not transmute her compensation request into an accounting. In sum, section 2620 does not support the probate court's procedure in this case.

### 2. *HARMLESS ERROR*

We examine whether the probate court's reliance on Probate Code section 2620 was harmless. Davidson must establish that it is reasonably probable a result more favorable to Davidson would have been reached absent the error. (*Pool v. City of Oakland* (1986) 42 Cal.3d 1051, 1069; Code Civ. Proc., § 475.)

"A guardian or conservator is subject to the regulation and control of the court in the performance of the duties of the office." (§ 2102.) As a court-appointed officer, the conservator remains under the control and continuing jurisdiction of the court in the discharge of her duties. (*In re Estate and Guardianship of Davis* (1967) 253 Cal.App.2d 754, 760; *Hillman v. Stults* (1968) 263 Cal.App.2d 848, 872; *Hartford Acc. & Indem. Co. V. Crawford* (1962) 204 Cal.App.2d 557, 561.) The probate court can, on its own motion, "intervene to prevent or rectify abuses" by a fiduciary. (*Schwartz v. Labow* (2008) 164 Cal.App.4th 417, 427; § 1850, subd. (b).) There is a fiduciary relationship between the conservator and conservatee. (§ 2101.) One of a conservator's duties is to exercise ordinary care and diligence in managing and controlling the conservatee's estate. (§ 2401.) The conservator's compensation is paid by the conservatee's estate. (§ 2640, subd. (c).)

In the instant case, the probate court suspected Davidson breached her fiduciary duty to Presha by overcharging for the services rendered. The issue of whether Davidson overcharged Presha's estate was a proper issue for the probate court to examine because Davidson is an agent of the probate court. (§ 2102; *Hartford Acc. & Indem. Co. v. Crawford*, *supra*, 204 Cal.App.2d at p. 561.) If Presha's estate was being abused by an agent of the probate court, then that was precisely the type of matter the probate court must regulate and control. (§ 2102; *Schwartz v. Labow*, *supra*, 164 Cal.App.4th at p. 427.)

In other words, if Davidson overcharged Presha's estate, and the probate court did not examine the issue, the probate court would be remiss in its duty to regulate and

13

control Davidson's performance as a fiduciary. (§ 2102.) In sum, the probate court had the authority to examine Davidson's billing practices because the manner in which Davidson performs her duties, such as billing clients, is subject to court control and regulation. (§ 2102.) Accordingly, although the probate court erred by relying on section 2620, subdivision (d) to explain its procedure, the error is harmless because the same procedure could have been employed via section 2102.

## B.    UTILIZING THE FINDING

Davidson contends the probate court erred by utilizing the finding concerning her improper billing practices when ruling on her petition for compensation.

We independently review whether the probate court employed an improper procedure. (*Lucas v. County of Los Angeles* (1996) 47 Cal.App.4th 277, 284-285.) Probate proceedings are purely statutory, therefore, probate courts "may not competently proceed in a manner essentially different from that provided" by the statutory scheme. (*In re Quinn's Estate* (1955) 43 Cal.2d 785, 787.)

The typical procedure when a conservator has overcharged an estate is to order the conservator to reimburse the estate for the estate's wrongful losses. (§§ 2401.3, 2625; *Bank of America v. Superior Court* (1986) 181 Cal.App.3d 705, 719.) In the instant case, rather than a two-step process (the estate suffers the wrongful loss and then Davidson reimburses the estate), the probate court reduced the process to one-step (Davidson does not wrongfully receive the money). The probate court made the procedure more efficient and did not alter the essential nature of the procedure. The

14

essential nature being that the estate pays only proper compensation and the conservator does not profit from improper charges. (§§ 2401.3, 2625; *Bank of America*, at p. 719.)

In December 2015, Davidson was given notice that the probate court was considering handling the issue via a single-step procedure. Thus, the probate court provided Davidson with approximately four months' notice of the single-step procedure and did not alter the essential nature of the procedure. Accordingly, we see no error in the procedure utilized by the probate court.

### C. UTILIZING THE PRIOR CASES

Davidson contends the probate court erred by utilizing the prior cases when ruling on her petition for compensation because the probate court violated the finality of the prior cases.

When an order becomes final, the conservator is released from any claim by the "conservatee and [by] any persons affected thereby based upon any act or omission directly authorized, approved, or confirmed in the . . . order." (§ 2103, subd. (a).)

The probate court's ruling did not affect the prior cases. The probate court's ruling in the instant case relates only to the petition for compensation that was before the court. On the petition pending before the probate court, the court granted Davidson compensation in the amount of $7,000. The probate court did not alter or adjust any prior compensation granted to Davidson. Accordingly, we are not persuaded that the probate court vitiated the finality of the prior cases.

15

D.    COMPENSATION FACTORS

Davidson contends the probate court erred by not utilizing the enumerated factors when ruling on her petition for compensation.

We examine whether the probate court abused its discretion by disregarding the proper legal standard.  (*In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 282-283; *In re Levi's Estate* (1943) 61 Cal.App.2d 644, 646.)  When granting compensation to a conservator, the probate court should determine what amount is "just and reasonable."  (§§ 2623, subd. (a)(2), 2640, subd. (c).)  There is an enumerated list of nine factors a probate court may consider when determining what amount of compensation is just and reasonable.  (Cal. Rules of Court, rule 7.756(a).)

One of the enumerated factors is "[t]he time spent by the conservator or guardian in the performance of service."  (Cal. Rules of Court, rule 7.756(a)(5).)  The probate court explained that Davidson inaccurately reported the time she spent on various tasks.  For example, Davidson wrongly reported the amount of time she spent on receiving an e-mail from her accountant.  Accordingly, the probate court considered the factor of time spent on tasks and found Davidson inaccurately reported her time.

Another factor is the necessity of the services performed.  (Cal. Rules of Court, rule 7.756(a)(3).)  The probate court explained that Davidson performed unnecessary services, such as filing a copy of bank policies in Presha's file, when Davidson utilized the same bank for all of her accounts.  The probate court concluded Davidson could have one file for bank policies that is universal, and therefore not charge Presha for the

16

act of filing the document. Accordingly, the probate court considered the factor of the necessity of the services and found Davidson performed unnecessary tasks.

A third factor is "[t]he conservator's or guardian's estimate of the value of the services performed." (Cal. Rules of Court, rule 7.756(a)(8).) The probate court explained that many of Davidson's tasks were clerical in nature and could have been performed by an office assistant who would bill at a lower rate than Davidson. The probate court's conclusion reflects it considered the issue of whether Davidson was overvaluing the cost of the services performed, and it concluded her estimate of the value of the services performed was too high. In sum, the probate court considered the relevant factors when determining that $7,000 would be just and reasonable compensation for Davidson.

## DISPOSITION

The order is affirmed. Davidson must pay her costs on appeal.[3] (Cal. Rules of Court, rule 8.278(a)(4).)

CERTIFIED FOR PUBLICATION

MILLER
J.

We concur:

McKINSTER
Acting P. J.

CODRINGTON
J.

---

[3] Respondents did not make a substantive appearance in this court and so we do not make an award of costs in their favor. (Cal. Rules of Court, rule 8.278 (a)(5).)

17